UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CHRISTOPHER KOTERAS, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 5:20-CV-186-CHB-MAS |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL AKERS, Warden, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

*** *** *** ***

This matter is before the Court upon Petitioner Christopher Koteras's Objections [R. 32] to Magistrate Judge Matthew A. Stinnett's Recommended Disposition [R. 27] (hereinafter, "Recommendation") of Koteras's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [R. 1]. The Court has thoroughly reviewed the entire record, the relevant legal authority, and the Recommendation, and agrees with Magistrate Judge Stinnett's careful analysis and conclusions for the reasons that follow.

## I.    Background

In May of 2011, Koteras was charged with 24 counts of Sexual Abuse in the First Degree in the Circuit Court of Jessamine County, Kentucky. [R. 11-2, p. 29]. The charges arose from Koteras's repeated sexual abuse of his daughter over the course of four years when she was between the ages of seven and eleven. *Id.* at 19–28. The prosecution dismissed sixteen counts prior to trial. *Id.* at 30. A jury convicted Koteras on all eight remaining counts in July of 2012. *Id.* at 20–27. The trial court sentenced Koteras to the twenty-year statutory maximum sentence. *Id.* at 30–32. Koteras appealed, but the Kentucky Supreme Court affirmed his convictions and

sentence. *See Koteras v. Commonwealth*, No. 2012-SC-00649-MR, 2014 WL 5410233 (Ky. Oct. 23, 2014).

Koteras filed a motion to vacate his conviction and sentence pursuant to RCr 11.42 in August of 2015. [R. 1, p. 3]. Following an evidentiary hearing, the trial court denied the motion in March 2017. *Id.* Koteras appealed, but the Kentucky Court of Appeals affirmed the denial of relief in December of 2018. *See Koteras v. Commonwealth*, 589 S.W.3d 534 (Ky. App. 2018). The Kentucky Supreme Court denied discretionary review on December 13, 2019. [R. 11-2, p. 352].

In May of 2020, Koteras filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court. [R. 1]. Koteras claims that his counsel at trial and on direct appeal provided ineffective assistance in numerous particulars. *See generally* [R. 1]; [R. 1-1]. Following briefing by the parties, [R. 11]; [R. 22], Magistrate Judge Stinnett issued his Recommendation that each of Koteras's habeas claims be denied as procedurally defaulted, substantively without merit, or both. [R. 27]. Koteras has filed timely objections. [R. 32].

## II.   Standard of Review

The Court must make a *de novo* determination of those portions of the Recommendation to which objections have been made. 28 U.S.C. § 636(b)(1). The Court liberally construes Koteras's *pro se* submission. *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).

Before a petitioner may assert a claim seeking federal habeas relief, he must have fully utilized, or "exhausted," all available opportunities to present a particular claim to the state courts for consideration. 28 U.S.C. § 2254(b)(1)(A). To exhaust a claim, the petitioner must "fairly present" it to the state courts by clearly indicating both its factual basis and the federal legal grounds upon which it is predicated. *Hicks v. Straub*, 377 F. 3d 538, 552–53 (6th Cir. 2004)

("[T]he exhaustion doctrine requires the petitioner to present the same claim under the same theory to the state courts before raising it on federal habeas review.") (cleaned up).

The petitioner must comply with state procedural rules when presenting his federal claims to the state courts for consideration. If he fails to do so, the claim is "procedurally defaulted" and may not be considered on federal habeas review. *Gerth v. Warden, Allen Oakwood Corr. Instit.*, 938 F. 3d 821, 826–27 (6th Cir. 2019). A petitioner procedurally defaults a claim if the last state court to address it refuses to consider its merits because the petitioner did not comply with a state procedural rule that (1) is independent of the federal claim and (2) is adequate to support the judgment. *Lovins v. Parker*, 712 F. 3d 283, 295 (6th Cir. 2013). Procedural default also occurs if the petitioner did not present the federal claim to the state courts for consideration, and state procedures no longer permit the claim to be raised when the federal habeas petition is filed. *Williams v. Burt*, 949 F. 3d 966, 972–73 (6th Cir. 2020).

A federal court considering the merits of a § 2254 claim applies a deferential standard of review. It will not grant relief unless the state court's ruling:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Under subsection (d)(1), a state court decision is "contrary to" Supreme Court precedent only "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (cleaned up). A state court "unreasonably applies" Supreme Court precedent when "the state court identifies the correct governing legal principle from the Supreme Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413 (cleaned up). Federal habeas relief is not available for state law application errors unless the error resulted in the denial of a fundamentally fair trial. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *see also Brooks v. Anderson*, 292 F. App'x 431, 437 (6th Cir. 2008).

When the petitioner asserts under subsection (d)(2) that the state court unreasonably determined the facts, the state court's findings of fact are presumptively correct, and the petitioner must rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e); *Carter v. Brogan*, 900 F.3d 754, 768 (6th Cir. 2018) ("The record must compel the conclusion that the state court had no permissible alternative but to arrive at the contrary conclusion.") (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)) (cleaned up). Collectively, these rules establish a "'highly deferential standard for evaluating state-court rulings,' which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 520 U.S. 320, 333 n.7 (1997)).  By design, the habeas petitioner faces a burden that is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014).

In this case, Koteras asserts that trial and appellate counsel rendered constitutionally ineffective assistance. *See generally* [R. 1-1]. The Sixth Amendment affords every defendant in a criminal trial the right to "the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right is designed to ensure that the defendant actually receives a fair trial. *United States v. Cronic*, 466 U.S. 648, 658 (1984). Therefore, to satisfy the Sixth Amendment's mandate, defense counsel must be "effective." *Strickland v. Washington,* 466 U.S. 668, 685–86 (1984); *McMann v.*

*Richardson*, 397 U.S. 759, 771 n.14 (1970) ("It has long been recognized that the right to counsel is the right to the effective assistance of counsel.").

To establish ineffective assistance of counsel, a defendant must make two showings. First, he must demonstrate that his attorney's performance was deficient, meaning that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 687. When evaluating counsel's performance, a reviewing court is required to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Second, the defendant must establish that his counsel's performance was so prejudicial as to deprive him of a fair trial. To demonstrate such prejudice, he must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Harvey v. United States*, 798 F. App'x 879, 883–84 (6th Cir. 2020).

When a state court has rejected an ineffective assistance claim on the merits, the federal habeas court's review of the claim is "doubly deferential," both because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Burt v. Titlow*, 571 U.S. 12, 22 (2013)), and in light of the deferential standard of review embodied in § 2254(d). Therefore, the federal habeas court, viewing an ineffective assistance claim through two layers of deference, asks only "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). And "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (quoting

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Walker v. McQuiggan*, 656 F.3d 311, 323 (6th Cir. 2011) ("[T]he Supreme Court's *Strickland* guidelines provide us only minimal direction. But in a habeas case, such generality necessarily works to the petitioner's disadvantage.") (Cook, J., dissenting), cert. granted, judgment vacated sub nom. *Howes v. Walker*, 567 U.S. 901 (2012). The Court considers Koteras's claims with these standards in mind.

### III.   Analysis

Koteras raises a host of objections to Magistrate Judge Stinnett's Recommendation, and the Court addresses each in turn.

### A.  Victim Advocate's Gestures

First, Koteras alleges that during the trial testimony of "Amanda" (the pseudonym given to his minor daughter and the victim in his case), Victim's Advocate Dawn Seamands made hand gestures and head movements directed toward Amanda. [R. 1-1, pp. 15–20]. Koteras further alleges that he immediately brought this to the attention of his attorneys, but that neither acted immediately to stop it. *Id.* Instead, counsel only objected thirty minutes later, before beginning their cross-examination, at which time the trial judge directed Seamands to move to the front row of the gallery. *Id.* Koteras contends that Seamands's actions exceeded those permitted by the enabling Kentucky statute and improved Amanda's confidence as a witness, effects which assertedly violated his right to a fundamentally fair trial. *Id.*

During collateral review proceedings, the two attorneys who represented Koteras at trial stated that they did not personally see Seamands give Amanda any signals, but that during trial, Koteras told them that she had. [R. 1-4, p. 5]. Witnesses for Koteras also testified that they saw Seamands make some gestures but acknowledged that they did not communicate this to counsel

at trial. *Id.* For her part, Seamands testified that she only motioned for Amanda to keep her voice up during her testimony by gesturing her thumb upwards and by cupping her hand to her ear. *Id.* The trial judge indicated that he did not see Seamands making any improper gestures. *See id.* ("The only motions made by Ms. Seamands were for Amanda to keep her voice up."). On appeal, the Kentucky Court of Appeals found no error in the trial court's factual findings that Seamands' gestures were not improper and did not amount to coaching the witness, and therefore held that defense counsel was not ineffective for failing to object sooner. *Koteras*, 589 S.W.3d at 545–46.

Considering these findings, Magistrate Judge Stinnett concluded that Koteras has failed to demonstrate either that the state courts made an unreasonable determination of fact or unreasonably applied the law. [R. 27, pp. 5–7]. On review, this Court fully concurs. Koteras is the only person who alleges he both saw improper gesturing by Seamands and communicated his concerns to counsel. On the other hand, Seamands contradicted Koteras's allegation regarding the nature of her gestures toward Amanda, and neither of his attorneys nor the trial judge saw any improper communication. Koteras fails to demonstrate that the Kentucky courts unreasonably determined as a factual matter than Seamands' gestures were not improper coaching. And Koteras's repeated objection that the Kentucky "Court of Appeals relied on an interpretation of KRS 421.575 which is inconsistent with established state law," [R. 32, p. 6], fails to establish grounds for federal habeas relief. *Estelle*, 502 U.S. at 67–68. The Kentucky courts did not unreasonably apply federal law in concluding that Koteras had shown neither deficient performance nor resulting prejudice. Moreover, Koteras points to no precedent from the United States Supreme Court establishing error.

### B.  Counsel's Decision Not to Hire Psychiatrist

Prior to trial, Koteras's attorneys hired psychologist Dr. Eric Drogin to assist in the defense. In a May 14, 2012 letter, Dr. Drogin advised counsel to hire a psychiatrist to evaluate Amanda. *See* [R. 11-2, pp. 35–36]. The letter further suggested that the psychological expert should review video of an interview with Amanda conducted by the Child Advocacy Center ("CAC") shortly before criminal charges were filed to determine if the questions asked were excessively or improperly leading. *Id.* After consulting with Koteras, counsel decided against that advice because they believed it was not helpful to their strategy in the case. *See Koteras*, 589 S.W.3d at 543–44. Counsel intended to argue that Amanda was scared of Koteras because of his admitted psychological, verbal, and physical abuse, and fabricated the sexual abuse allegations to avoid spending time with him. *Id.* Further, at the time charges were filed, Koteras was in the midst of an acrimonious divorce with Amanda's mother, and counsel intended to depict the mother as supportive of the abuse allegations to obtain advantage in the dissolution proceedings. *Id.* Counsel also feared that a new evaluation might open the door to the admission of unhelpful testimony from therapist Janet Vessels. *Id.* Notwithstanding, Koteras's second claim is that his attorneys were ineffective because they declined to follow Dr. Drogin's recommendation. [R. 1, pp. 20–31].

The Kentucky Court of Appeals rejected this claim, noting that Dr. Drogin testified during collateral review proceedings that the possible effects of leading questions were his only concern, and that, in cases of child sexual abuse, such questions are often asked of the young victim to help elicit a response. *Koteras*, 589 S.W.3d at 542–44. Dr. Drogin, who is also an attorney, further testified that, overall, the CAC interview was "fairly standard," and that, given the trial strategy, it was within the discretion of Koteras's counsel to decide not to hire the

additional expert. The Kentucky courts therefore held that the decision not to pursue that avenue fell well within trial counsel's broad discretion and did not amount to ineffective assistance. *Id.*

As Magistrate Judge Stinnett noted in his Recommendation, Koteras's trial counsel retained an expert but concluded that further psychological investigation of Amanda or a review of her CAC interview would not bear further fruit in light of the defense strategy of the case. As a practical matter, time and money limit defense counsels' ability to investigate every conceivable defense, and counsels' choice of certain strategies necessarily limits or excludes others. Here, counsel reasonably concluded that further investigation would likely not be helpful and could open the door to the introduction of potentially harmful testimony. Even without the two-fold deference required by *Strickland* and Section 2254(d), that conscious strategic decision was eminently reasonable. *See Strickland*, 466 U.S. at 699 ("Restricting testimony on respondent's character to what had come in at the plea colloquy ensured that contrary character and psychological evidence and respondent's criminal history, which counsel had successfully moved to exclude, would not come in.").

Finally, Koteras offers only unsupported conjecture, not evidence, that the information obtained would not only have been helpful, but so helpful as to produce a reasonable likelihood that the outcome of the trial would have been different. This fails to demonstrate any prejudice. *See Harvey*, 798 F. App'x at 883–84. The Kentucky Court of Appeals so held, and Koteras fails to point to any Supreme Court precedent indicating that this conclusion was incorrect.

### C. Details of Each Instance of Abuse

Koteras was originally charged with committing sexual abuse of Amanda on twenty-four separate occasions. [R. 11-2, p. 29]. The indictment did not specifically identify the conduct involved in each instance or the date on which it occurred. *See* [R. 1-1, p. 31]. However, the

prosecutor's office in Jessamine County maintained an "open file" policy, permitting defense counsel to review at its convenience all non-confidential information about the prosecution's case, including such specifics. *Koteras*, 589 S.W.3d at 547. As stated, before trial, the prosecution dismissed sixteen of the counts. [R. 11-2, p. 20]. Koteras's counsel then requested particularized information regarding each of the remaining counts, which the trial court directed. *Id.* Nine days before trial, in a letter to defense counsel dated July 16, 2012, the prosecution set forth the particular facts supporting each of the eight remaining counts. *Id.* In his petition, Koteras asserts that counsel were ineffective because, he alleges, this information was not relayed to him before trial and he only discovered the particular occasions of alleged sexual abuse from trial testimony. *See* [R. 1-1, pp. 31–32].

The Kentucky Court of Appeals, however, held that Koteras "admitted trial counsel discussed notice of the charges with him," and noted that trial counsel testified during collateral review proceedings that they were fully aware of the nature of the charges against Koteras. *Koteras*, 589 S.W.3d at 546. Further, Koteras's defense at trial was not to argue the specific events of any given sexual assault, but to deny that *any* of them had ever occurred. As a result, the success of that defense hinged simply upon whether the jury found Amanda or Koteras to be the more credible witness. Accordingly, Koteras failed to demonstrate prejudice because the specifics of each particular offense were not pertinent given his across-the-board assertion that none of the episodes of abuse had occurred at all. *Id.* at 547. And as aptly noted in Magistrate Judge Stinnett's Recommendation, Koteras fails to show that he would have pursued a different defense theory if the information had been provided sooner. [R. 27, p. 12]. Koteras has failed to establish any viable basis for habeas relief on this claim.

In his objections, Koteras argues that he is entitled to *de novo* review of this claim because, he contends, the Kentucky Court of Appeals required him to show that he *would have been acquitted* but for counsel's ineffective performance, rather than applying the correct rule that he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. This contention is wholly meritless. In a single sentence of its opinion, the Kentucky Court of Appeals stated, "[n]or has it been shown Christopher would have been acquitted with more information or more notice." *Koteras*, 589 S.W.3d at 547. The sentence is contained in a discussion applying the law to already-stated facts; there is no citation to authority.

In comparison, the Kentucky Court of Appeals fully articulated and/or applied the proper *Strickland* standard for prejudice four separate times, making clear its proper understanding of the governing standard. *See id*. at 541, 542, 545, 550. The United States Supreme Court has cautioned that when reviewing a state court decision, "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law," because § 2254(d) requires "state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Therefore, if the state court otherwise expresses a proper understanding of the applicable federal standard, an offhanded articulation of that rule which does not fully encapsulate the proper standard with all of its nuances intact does not justify a conclusion that the state court misapplied federal law. *Cf. Holland v. Jackson*, 542 U.S. 649, 654–55 (2004) ("Last was the statement that respondent had 'failed to carry his burden of proving that the outcome of the trial would probably have been different but for those errors.' We have held that such use of the unadorned word 'probably' is permissible shorthand when the complete *Strickland* standard is

elsewhere recited.") (cleaned up). The Kentucky Court of Appeals stated, understood, and applied the proper standard for prejudice under *Strickland*, and this claim will be denied.

### D.  Adequate Notice of the Charges Against Koteras

On direct appeal, counsel did not assert a claim that the indictment failed to give Koteras adequate notice of the charges against him, an omission he contends amounted to ineffective assistance. [R. 1-1, pp. 36–39]. Koteras cursorily raised this argument during collateral review proceedings before the trial court; however, the trial court noted the argument but declined to rule on it specifically when it denied his RCr 11.42 motion. *Koteras*, 589 S.W.3d at 547. The Kentucky Court of Appeals therefore declined to address the argument on appeal, concluding that it was procedurally barred because Koteras "did not give the trial court an opportunity to correct any oversight by seeking reconsideration of the motion to vacate or moving for specific findings per CR 52.01 and CR 54.02(2)." *Id.*

Although the Court finds no error in the Kentucky Court of Appeals' determination that Koteras's claim was procedurally defaulted, the Court observes that this claim is substantively meritless even under *de novo* review. As noted above, even if trial counsel did fail to obtain a description of the specific facts of each of the eight counts of abuse, that circumstance could not and did not prejudice Koteras's defense, which was in no way dependent upon such particularized information. Koteras did not contend that he was not present during any of the eight episodes where he was alone with Amanda; instead, the defense theory was that no sexual abuse transpired during any of those encounters. Koteras's repeated and conclusory assertion of prejudice fails to provide concrete support for the conclusion that, had the information been obtained at counsel's insistence, there is "a reasonable probability that . . . the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. Appellate counsel did not

act unreasonably in declining to pursue a meritless claim. Accordingly, this habeas claim will also be denied.

### E.  Introduction of Emergency Order of Protection

Prior to their divorce, Koteras's then-wife Jennifer obtained an Emergency Order of Protection ("EPO") against him. *Koteras*, 2014 WL 5410233, at *1. In the EPO application, Jennifer stated that during and after an argument she became "scared to death" that he "will hurt [her]"; she locked herself in her room as Koteras pounded on the door demanding the keys to her car; and that Koteras "did something to [her] sexually that [she] didn't want." *Id.* During trial, Koteras agreed to the admission of the EPO but was successful in excluding any reference within it to unwanted sexual activity. *Id.* at *3–4. However, during direct and cross-examination, Koteras repeatedly denied any physical aggression towards Jennifer. *Id.* In light of these denials, the prosecution then sought to introduce Jennifer's sexual allegations in the EPO. *Id.* The trial court rejected the request, but consistent with the wording in the EPO defense counsel and the trial court agreed that the prosecution "could simply mention Koteras did something 'physically' that Jennifer did not want without ever mentioning any alleged sexual aspect." *Id.* at *4. On direct appeal, Koteras challenged the admission of the EPO as unduly prejudicial, but the Kentucky Supreme Court found the admission was neither improper nor prejudicial. *Id.*

Having failed to persuade on the substantive evidentiary claim, in collateral review proceedings, Koteras attempted to recast the claim as one of ineffective assistance, complaining that his attorneys failed to prevent the EPO's introduction. The trial court rejected that argument, noting, "[b]ecause the admission of evidence of domestic violence was consistent with the trial strategy agreed to by the defendant and counsel, there are no grounds within this issue to argue ineffective assistance of counsel." [R. 1-4, pp. 6–7]. Koteras appealed, but not on this ground.

Magistrate Judge Stinnett's Recommendation therefore properly concluded that Koteras procedurally defaulted this claim. *See* [R. 27, pp. 13–14]. In his reply brief, Koteras argued only that his default should be excused to avoid a fundamental miscarriage of justice. [R. 22, pp. 11–12]. In his objections, he abandons that argument in favor of two entirely new ones, contending for the first time that he exhausted this claim by presenting it in his motion for discretionary review to the Kentucky Supreme Court and that his claim of actual innocence should excuse any default. [R. 32, p. 23–25]. But 28 U.S.C. § 636 "permits *de novo* review of a magistrate judge's decision by the district court if timely objections are filed; absent compelling reasons, it does not generally allow parties to raise new arguments or issues that were not presented to the magistrate." *Moore v. United States Dep't of Agric.*, No. 17-5363, 2018 WL 1612299, at *2 (6th Cir. Jan. 31, 2018) (citing *United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998)); *Marshall v. Chater*, 75 F.3d 1421, 1426–27 (10th Cir. 1996) ("[I]ssues raised for the first time in objections to magistrate judge's report and recommendation are deemed waived."). The Court finds no reason to engage with Koteras's ever-changing justifications for his failure to fully present his claims to the Kentucky courts.

This is particularly so because Magistrate Judge Stinnett's Recommendation also correctly noted that Koteras's claim is substantively meritless. [R. 27, p. 14]. Koteras's trial defense was that his bipolar disorder and history of psychological, verbal, and physical abuse, for which there was ample evidence, motivated Amanda to fabricate allegations of sexual abuse in an effort to avoid further contact with him. The EPO was part of that narrative, and with counsel's requested exclusion from it any reference to unwanted *sexual* contact, the EPO was not unduly prejudicial. Koteras failed to establish either deficient performance or resulting prejudice, particularly under the deferential lens required by *Strickland*.

- 14 -

### F.  Koteras's Out-of-Court Statements to Police

During an interview with police, Koteras told them Amanda was lying when she said that he had repeatedly sexually abused her. *Koteras*, 589 S.W.3d at 547. The prosecution cross-examined Koteras about these out-of-court statements at trial. *Id.* Koteras contends that his counsel rendered ineffective performance by not objecting to this line of questioning, asserting that it is improper to ask a witness whether another witness's testimony at trial is truthful. [R. 1-1, p. 45]. The Kentucky Court of Appeals quickly dispatched this claim, noting that Koteras's whole theory of the case was that Amanda was lying, and that the prohibition against asking a witness about another's truthfulness is limited to the other witness's testimony *at trial*. *Koteras*, 589 S.W.3d at 547–48. Magistrate Judge Stinnett's Recommendation correctly concluded that this claim is entirely meritless; counsel is not ineffective for declining to object to questions that are not improper. [R. 27, pp. 14–15]. Koteras has failed to point to any evidently applicable Supreme Court precedent undermining the conclusions of the Kentucky courts on this point.

In his objections, Koteras again pivots to a new argument, claiming entitlement to *de novo* review because, he contends, the Kentucky Court of Appeals applied the wrong standard. [R. 32, p. 27]. This argument is both procedurally barred and substantively meritless. As noted above, a party may not make new arguments for the first time in objections to a magistrate's recommendation. *Waters*, 158 F.3d at 936. In his petition, Koteras asserted entitlement to relief under the deferential standard required by Section 2254(d), *see* [R. 1-1, p. 48], and he may not now claim entitlement to a different standard of review at this late stage of proceedings. Further, the Kentucky Court of Appeals applied the proper standard when assessing this claim; again, Koteras's claim of ineffective assistance was necessarily without merit if the objection that he claims counsel should have made was itself without merit. *Coley v. Bagley*, 706 F.3d 741, 752

(6th Cir. 2013).  For these reasons, the Court overrules these objections and denies relief on this ground.

### G. Prosecution's Closing Argument

During its closing argument, the prosecution stated that Amanda showed great courage by testifying to her father's abuse in open court and in front of the jury. *Koteras*, 589 S.W.3d at 548. Koteras contends that the prosecutor's comments amounted to improper "vouching" and "bolstering" of Amanda's credibility. [R. 1, p. 23]. "Vouching" occurs "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility"; "Bolstering" occurs "when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury." *United States v. Francis*, 170 F.3d 546, 550, 551 (6th Cir. 1999). Koteras contends his counsel was ineffective when they did not object to the prosecutor's closing argument during trial. [R. 1, p. 23].

The Kentucky Court of Appeals rejected Koteras's bolstering argument, noting that the prosecution never referenced Amanda's testimony at all, and did not state or even suggest his belief that it was truthful. *Koteras*, 589 S.W.3d at 548. Instead, the prosecution's comments related to her state of mind, and were offered in response to Koteras's own closing argument which focused upon Amanda's delay in reporting the abuse and claimed that her testimony was provided by and rehearsed with the prosecutor and victim's advocate. *Id.* Because the prosecution's comments were not improper, the court held that Koteras's counsel were not ineffective for not objecting to them. *Id.* Koteras made his vouching argument to the trial court, but, unlike his bolstering argument, failed to further pursue it before the Kentucky Court of Appeals. *See* [R. 27, p. 16 n.9].

- 16 -

Magistrate Judge Stinnett's Recommendation therefore concluded that this Court need not reach Koteras's vouching argument notwithstanding the respondent's failure to assert the defense of procedural default with respect to it. *See* [R. 27, p. 16 n.9]. Not so. *See Cf. Smith v. Moore*, 415 F. App'x 624, 628 (6th Cir. 2011) ("A respondent failing to raise his procedural default challenge waives it. 'The state may waive a defense,' including procedural default, 'by not asserting it.'") (citing *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004)).

However, as noted in Magistrate Judge Stinnett's Recommendation, the Kentucky courts did not fail to reasonably apply Supreme Court precedent when rejecting the bolstering and vouching claims on the merits. [R. 27, p. 17] ("Stated differently, the state court concluded that there was no bolstering, therefore there was no bolstering objection to make, therefore counsel made no error, and therefore the first prong of *Strickland* was not met."). As with Koteras's previous claim, the Jessamine Circuit Court and the Kentucky Court of Appeals reasonably concluded that trial counsel were not ineffective for deciding not to object where Koteras failed to show that the prosecutor's comments amounted to vouching or bolstering in the first place. *See* [R. 11-2, p. 141]; *Koteras*, 589 S.W.3d at 548. Koteras contends that the Kentucky courts somehow applied the wrong standard by focusing on the underlying prosecution statements, but determining the viability of an objection is fundamental to assessing *Strickland*'s deficient performance prong, and his objection is therefore fundamentally misguided. *See Koteras*, 589 S.W.3d at 548 ("No defense objection was necessary as there was no error."). Accordingly, the Kentucky courts' conclusion that counsel did not provide ineffective assistance in this respect was not an unreasonable application of *Strickland*.

### H.  Failure to Call Character Witnesses

Koteras next claims counsel was ineffective for failing to call two character witnesses on his behalf, Julie Evans and Eugene LaPierre. [R. 1-1, p. 55]. Evans was Koteras's therapist for approximately five years before his trial; LaPierre was a co-worker who knew Koteras for a comparable period of time. *Id.* Counsel testified that Koteras did not give him the names of either of these acquaintances to testify as character witnesses at his trial. *Koteras*, 589 S.W.3d at 549. The only character witness called at trial on Koteras's behalf was his then-girlfriend, Carolyn Flynn. *Id.*

The Kentucky trial and appellate courts both stated that in cases such as this, the value of a character witness is largely lost once the prosecutor asks if positive character testimony would change if the acquaintance knew about the defendant's child sexual abuse, regardless of whether the witness answers yea or nay. *Id.* The Kentucky Court of Appeals further noted that: (1) Koteras stated generically in his RCr 11.42 motion that he gave counsel the names of unidentified "coworkers and supervisors"; (2) did not identify Andrews and LaPierre by name in his RCr 11.42 motion, but only did so at the evidentiary hearing; and (3) passed on repeated opportunities to clearly state that he gave their names to counsel before trial. *Id.* Thus, the Kentucky Court of Appeals' opinion suggests possible procedural and substantive grounds for denial. Procedurally, it held that Koteras did not adhere to RCr 11.42(2) because he "did not claim with specificity he asked counsel to contact Evans and LaPierre and offer them as character witnesses." *Id.* Substantively, the court stated that "in post-conviction counsel's supplemental pleading, Evans, LaPierre and others are mentioned, but counsel avoids saying [Koteras] identified any particular character witness to counsel prior to trial." *Id.*

- 18 -

On review, this Court concurs with Magistrate Judge Stinnett's reasoning denying this claim. Procedurally, as Magistrate Judge Stinnett found, the Kentucky Court of Appeals invoked RCr 11.42(2) to reject Koteras's claim for failure to specify the specific basis for his claim. *See* [R. 27, p. 18–19] (citing *Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.") (cleaned up). Koteras simply ignored the Kentucky Court of Appeals' determination in his briefing. *See* [R. 1-1, p. 56]; [R. 22, p. 16]. Substantively, as Magistrate Judge Stinnett further found, the Kentucky court noted that "cross-examination would have reiterated damaging aspects of the case and diluted any value the defense would have hoped to achieve by calling Evans and LaPierre." *Koteras*, 589 S.W.3d at 549. Even if Koteras had established that he told his counsel before trial that these persons could provide favorable character testimony, the likely damaging effects of cross-examination upon them undermines any argument for either deficient performance by counsel or resulting prejudice arising from a decision not to call them to the stand. Given the wide latitude afforded to trial counsel's strategic decisions regarding witness selection, *cf. Railey v. Webb*, 540 F. 3d 393, 415 (6th Cir. 2008), Koteras has failed to overcome the strong presumption of reasonableness required by *Strickland*, 562 U.S. at 105.

## I. Koteras's Willingness to Submit to a Polygraph Examination

First during a police interview and later in pretrial proceedings, Koteras requested that a polygraph examination be conducted. [R. 1-1, p. 58]. No such test was ever performed. *Id.* On the morning of trial, defense counsel requested that evidence be admitted showing that Koteras had volunteered to take a polygraph test, but the trial court denied the motion. *Id.* Koteras contends that while the results of polygraph tests are themselves inadmissible, evidence of a

willingness to take a polygraph test may be admissible under certain circumstances. *Id.* at 59. Koteras claims that his counsels' failure to effect admission of his willingness to submit to a polygraph examination amounts to ineffective assistance. *Id.* Koteras raised this claim in his RCr 11.42 motion but did not appeal the denial of it. Koteras blames that omission upon the asserted incompetence of his appointed collateral review appellate counsel (as opposed to, say, the conscious abandonment of tenuous claims in favor of more plausible contentions). *See* [R. 22, pp. 18–19].

Magistrate Judge Stinnett's Recommendation correctly indicates that this claim is procedurally defaulted in light of Koteras's acknowledged failure to pursue it on direct appeal from the denial of relief on collateral review. [R. 27, p. 20] ("A person convicted in a Kentucky state court procedurally defaults his claim if he fails to appeal from a trial court order denying post-conviction relief.") (citing *Wesselman v. Seabold*, 834 F.2d 99, 101–02 (6th Cir. 1987)). In his objections, Koteras again asserts for the first time that he raised his concerns in his motion for discretionary review to the Kentucky Supreme Court, and that his actual innocence of the crimes for which he was convicted warrants substantive review of his claims. [R. 32, pp. 39–40]. But Koteras did not, in fact, raise this aspect of his ineffective assistance claim in his motion for discretionary review. *See* [R. 22-1, pp. 15–16]. And Koteras has made no effort to demonstrate his actual innocence, a determination that must be established by actual evidence, not mere proclamation.

The claim is also substantively baseless. As noted above, Koteras himself acknowledges that counsel *did* try to introduce evidence of his offer to take a polygraph examination, only to be rebuffed by the trial court. [R. 1-1, p. 58]. Koteras could have challenged the trial court's ruling on appeal, but he did not. Short of openly disregarding the trial court's order, Koteras does not

explain what more his counsel could have done. Further, Magistrate Judge Stinnett's Recommendation notes that "the Kentucky Supreme Court has explicitly held that a defendant's offer to submit to a polygraph examination is inadmissible when used to bolster the defendant's credibility, as Koteras intended to use it here." [R. 27, p. 20 n.12] (citing *Hartley v. Commonwealth*, 2011 WL 2112393, at *6 (Ky. 2011)). Koteras disparages the Recommendation for relying on an unpublished decision that he characterizes as "non-controlling." [R. 32, p. 40]. But *Hartley* is a decision of the Kentucky Supreme Court, and it cites two published and on-point cases. *Hartley*, 2011 WL 2112393, at *5 ("This Court 'has held repeatedly and consistently' that polygraph evidence is inadmissible, including 'mention of the taking of a polygraph, the purpose of which is to bolster the claim of credibility or lack of credibility of a particular witness or defendant.'") (citing *Ice v. Commonwealth*, 667 S.W.2d 671, 675 (Ky. 1984); *Morgan v. Commonwealth*, 809 S.W.2d 704, 706 (Ky. 1991)); *see also Bowe v. Commonwealth*, No. 2019-SC-0368-MR, 2020 WL 7395167, at *6, n.24 (Ky. Dec. 17, 2020) ("The rule that evidence of polygraph examinations and results is inadmissible is well-settled and long-standing. Similarly, a party's offer to take a polygraph or refusal to take a polygraph is inadmissible. We exclude such statements whether the person taking, offering to take, or refusing to take the examination was the accused or another witness.") (citing *Stalling v. Commonwealth*, 556 S.W.2d 4 (Ky. 1977) (excluding evidence of refusal to take polygraph test); *Penn v. Commonwealth*, 417 S.W.2d 258 (Ky. 1967) (excluding evidence of offer to take polygraph test)). Koteras's counsel was not ineffective for declining to pursue further the introduction of evidence that the trial court had already (and appropriately) rejected.

### J.   Cumulative Error

In his final claim, Koteras contends that his right to due process was violated by "the combined prejudicial effect" of his attorneys' asserted ineffectiveness and numerous instances of claimed misconduct by the prosecution. [R. 1-1, p. 62]. Koteras pressed some version of this argument before the Kentucky courts, but he acknowledges that he did not persist with it on direct appeal from the denial of relief upon collateral review. [R. 22, p. 19]. Independent of questions regarding procedural default, Magistrate Judge Stinnett's Recommendation correctly notes that claims of "cumulative error" are not cognizable on federal habeas review.  [R. 27, p. 21] (citing *Rice v. Boyd*, No. 22-5413, 2022 WL 16835874, at *5 (6th Cir. Oct. 25, 2022); *see also Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief.").  Koteras does not object to this determination. [R. 32, p. 41]. In any event, this claim affords no basis for federal habeas relief.

### IV.   Koteras's Motion for Evidentiary Hearing [R. 25]

Magistrate Judge Stinnett's Recommendation concluded that an evidentiary hearing pursuant to 28 U.S.C. § 2254(e) was not necessary, both because the trial court held an evidentiary hearing during RCr 11.42 proceedings that effectively developed the factual basis for Koteras's claims, and because Koteras had not demonstrated the necessity for such a hearing under the standards set forth in *Cullen v. Pinholster*, 563 U.S. 170, 186 (2011). [R. 27, pp. 21–22]. The Court concurs with this analysis. *Cf. Sawyer v. Hofbauer*, 299 F.3d 605, 610 (6th Cir. 2002) (noting that an evidentiary hearing is only appropriate if the habeas petitioner "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing").

Additional considerations weigh in favor of denial of Koteras's motion for an evidentiary hearing. Koteras's motion dedicated a scant few paragraphs to generic argument that an evidentiary hearing was appropriate, stating that he wished to use it to solicit testimony from witnesses "of why claims were abandoned, and counsel failed to request the trial court enter a ruling on IAAC." [R. 25, pp. 1–2, 7]. But the balance of Koteras's motion is dedicated exclusively to new substantive arguments, long after briefing had closed, that his asserted procedural default of numerous claims should be excused on grounds of cause and prejudice. *See* [R. 25, pp. 2–7]. That strong emphasis indicates that the primary purpose of Koteras's motion was to relitigate an issue that had already been briefed thoroughly.

This conclusion is buttressed by the timing of Koteras's motion. Briefing on Koteras's petition concluded in August 2020 upon the filing of his reply. *See* [R. 22]. In that reply, Koteras expressly asserted that an evidentiary hearing was needed in this Court to assess the viability of his assertion that any procedural default of his claims could be overcome due to the neglect, oversight, or intentional choices made by his appellate counsel. *Id.* at 11–12. While no specific time frame is mandated for filing a Rule 8 motion seeking an evidentiary hearing, Koteras did not file his motion until nearly two years later in June 2022. *See* [R. 25]. Because the Warden urged in his July 2020 response to the petition that nearly half of Koteras's claims were procedurally defaulted, if Koteras intended to seek an evidentiary hearing on the issue to rebut those arguments, he was obliged to move for one promptly. Koteras offered no explanation for the extensive delay.

For these reasons, Magistrate Judge Stinnett properly denied Koteras's motion for an evidentiary hearing and issued his Report and Recommendation based on the fully developed record.

### V.      Certificate of Appealability

Finally, the Recommendation concluded that a certificate of appealability ("COA") should not issue with respect to any claim. [R. 27, pp. 23–24]. Interestingly, although Koteras objects to all but one of the Recommendation's conclusions regarding the disposition of his claims, he objects to only some, but not all, particulars of its COA determination. *See* [R. 32, pp. 42–43].

Upon independent review, this Court concludes that a COA should not issue. A certificate of appealability may issue if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment as to each of [the petitioner's] claims"). For claims assessed on their merits, this standard is met if the petitioner demonstrates that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a claim is rejected on procedural grounds, the petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 484–85. For the reasons set forth in the Recommendation and in this opinion, reasonable jurists would not find debatable the denial of habeas relief on the substantive and procedural grounds discussed.

Accordingly, the Court **ORDERS** as follows:

1.      The Court **ADOPTS** the Magistrate Judge's Recommended Disposition **[R. 27]**, as supplemented herein, as the opinion of the Court;

- 24 -

2.      Christopher Koteras's Petition for a Writ of Habeas Corpus **[R. 1]** is **DENIED**;

3.      The Court **DENIES** a Certificate of Appealability; and

4.      The Court will enter Judgment contemporaneously with this Order.

This 29th day of September, 2023.

*Claria Horn Boom*

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY